UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSHUA COPENHAVER,

       Plaintiff,                               Hon. Richard Alan Enslen

v.                                                      Case No. 1:06 CV 569

CAROL PARKER, et al.,

       Defendants.
_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants Parker's and Merlau's Motion for Summary Judgment, (dkt. #29), Defendant Blackmer's Motion for Summary Judgment, (dkt. #37), Plaintiff's Motion for Declaratory Judgment, (dkt. #44), and Defendants' Motion to Strike Plaintiff's Affidavit, (dkt. #57).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants Parker's and Merlau's Motion for Summary Judgment, (dkt. #29), be **denied**; Defendant Blackmer's Motion for Summary Judgment, (dkt. #37), be **denied**; Plaintiff's Motion for Declaratory Judgment, (dkt. #44), be **denied**; and Defendants' Motion to Strike Plaintiff's Affidavit, (dkt. #57), be **granted in part and denied in part**.

**BACKGROUND**

On September 30, 2005, Plaintiff initiated a lawsuit against various prison officials including Patricia Merlau and Carol Parker, both of whom are Defendants in the present action. *See Copenhaver v. Hammer*, Case No. 1:05-cv-675 (W.D. Mich.). In this previous action Plaintiff alleges that he was denied proper medical treatment in violation of the Eighth Amendment and the Americans with Disabilities Act. While most of Plaintiff's claims were subsequently dismissed, Plaintiff's Eighth Amendment claims against Defendants Merlau and Parker, as well as those against Dr. Raymond Gelabert, were permitted to go forward. Resolution of these particular claims is still pending.

On August 8, 2006, Plaintiff initiated the present action against Defendants Parker, Merlau, and Blackmer. Plaintiff asserts that Defendants improperly retaliated against him for pursuing (or threatening to pursue) legal action against them. The parties have since filed the various motions described above, the recommended resolution of which is articulated herein.

I.       **Defendants' Motion to Strike Plaintiff's Affidavit**

As part of his response in opposition to Defendant Blackmer's motion for summary judgment, Plaintiff submitted an affidavit. (Dkt. #55). Federal Rule of Civil Procedure 56(e) provides that affidavits used to oppose or support a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Defendants now move the Court to strike as improper certain portions of Plaintiff's affidavit which allegedly violate this provision. Specifically, Defendants seek to strike paragraphs 8-9, 12, and 19 of Plaintiff's affidavit.

The Court finds that paragraphs 8 and 19 both articulate opinions and conclusions rather than facts based on first-hand knowledge. With respect to paragraph 12, the Court agrees that Plaintiff has failed to "show affirmatively" that he is competent to testify regarding the matters asserted therein.[1] Finally, the Court disagrees with Defendants as to paragraph 9 of the challenged affidavit. While perhaps not artfully crafted, this particular paragraph asserts facts of which Plaintiff claims he has first-hand knowledge. Accordingly, the Court recommends that Defendants' motion be granted as to paragraphs 8, 12, and 19, but denied as to paragraph 9, of the challenged affidavit.

**II.        Plaintiff's Motion for Declaratory Judgment**

Plaintiff asserts that Defendant Blackmer, "despite being noticed of the instant action against him has refused to participate within his own affirmative defense, effectively acknowledging all allegations against him." While styled as a motion for declaratory judgment, it appears that Plaintiff is actually seeking the entry of default against Defendant Blackmer. Regardless whether Plaintiff's motion is interpreted as a request for default or declaratory judgment, the result is the same.

Plaintiff initiated this action on August 8, 2006. On September 14, 2006, the Court entered an Order directing that Plaintiff's complaint be served on Defendants. On September 29, 2006, the summons issued to Defendant Blackmer was returned unexecuted. On November 29, 2006, the Court granted in part Plaintiff's motion to effect service on Defendant Blackmer by alternate means. On January 9, 2007, service was effected on Defendant Blackmer. On January 16, 2007, Defendant Blackmer filed the motion for summary judgment presently before the Court.

---

[1] The Court notes, however, that Plaintiff has since submitted another affidavit, (dkt. #65), in which he asserts that he witnessed first-hand the matters described in paragraph 12.

Defendant Blackmer has timely responded to the allegations in Plaintiff's complaint. To the extent, therefore, that Plaintiff seeks the entry of default against Defendant Blackmer, the Court finds that such is without merit. To the extent that Plaintiff seeks declaratory relief, the Court's conclusion is the same. As discussed immediately below, the Court concludes that there exist legitimate factual disputes regarding Plaintiff's claim against Defendant Blackmer thus precluding summary disposition. Accordingly, the Court recommends that Plaintiff's motion for declaratory judgment be denied.

**III.        Defendants' Motions for Summary Judgment**

The following allegations are contained in Plaintiff's pleadings. In approximately March 2006, Defendant Blackmer "began to experience scrutiny from" his direct supervisor, Assistant Resident Unit Supervisor Kirsten Scheidler. (Dkt. #1 at ¶ 14). As a result, Defendant Blackmer began to criticize and degrade Scheidler in Plaintiff's presence. *Id.* Plaintiff participated in some of this activity as well. *Id.* at ¶ 15. When Plaintiff later decided that he no longer wished to engage in such conduct, Defendant Blackmer told Plaintiff that he had "better keep his mouth shut." Plaintiff nonetheless reported the matter to prison officials who disciplined Plaintiff and Defendant Blackmer. *Id.* After being disciplined, Defendant Blackmer told Plaintiff that he would "get even" with him. *Id.* at ¶ 16.

On April 25, 2006, Defendant Parker "attempted to order" physician's assistant Ouellette to discontinue the medications prescribed to Plaintiff to treat his cardiac impairment. *Id.* at ¶ 34. This effort proved unsuccessful, after which Defendant Parker contacted Correctional Medical Services and arranged for Plaintiff to be treated "only" by Dr. Gelabert, against whom Plaintiff has asserted a violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.*; *see also*, *Copenhaver*

*v. Hammer*, Case No. 1:05-cv-675 (W.D. Mich.). Plaintiff asserts that Defendant Parker undertook this action in retaliation for having been sued by Plaintiff. (Dkt. #1 at ¶¶ 23, 44).

That same day, Defendant Merlau instructed a prison official to search Plaintiff's cell for unauthorized nitroglycerin tablets. *Id.* at ¶ 18. This search was "inconclusive." *Id.* Later that day, Defendant Parker instructed Defendant Blackmer to again search Plaintiff's cell for unauthorized nitroglycerin tablets. *Id.* at ¶ 19. Defendant Blackmer found nitroglycerin tablets in Plaintiff's pants. *Id.* Defendant Blackmer seized the pills, despite Plaintiff's assertion that "they were a necessary medication for his heart condition." *Id.* at ¶¶ 19-20. When informed of this, Defendant Blackmer responded, "so what." *Id.* at ¶ 20.

Plaintiff then indicated to Defendant Blackmer that the searches of his cell (ordered by Defendants Merlau and Parker) were being conducted as retaliation for Plaintiff having initiated legal action against them. *Id.* at ¶ 21. To this Defendant Blackmer, stated, "yeah." At this point, Plaintiff told Defendant Blackmer that he would be filing a grievance against him and, furthermore, that he was "now party to a federal lawsuit." *Id.* The following day, Defendant Blackmer charged Plaintiff with two major misconduct violations: (1) substance abuse, and (2) bribery of a state employee. *Id.* at ¶ 23. Defendant Blackmer told Plaintiff that he was charged with misconduct as a way of reminding him that he was "a prisoner, nothing but a piece of shit." *Id.* at ¶ 33.

In response to the substance abuse charge, Plaintiff asserted that he had been properly prescribed the nitroglycerin tablets by hospital personnel during a February 21, 2006 hospital visit. *Id.* at ¶ 26. This was confirmed by one of the prison guards who transported Plaintiff to the hospital on February 21, 2006. (Dkt. #1, Exhibit 12). An investigation into this charge further revealed that "health services has been aware since Feb. 21 that [Plaintiff] has had this nitro in his possession, and has not

once told him he cannot have it." (Dkt. #55). Defendant Parker countered that "[r]eview of the health record reveals no current order for Nitroglycerin sublinqual [sic] (under the tongue) tablets. Any nitroglycerin in [Plaintiff's] possession would be considered contraband." (Dkt. #1, Exhibit 13). On May 12, 2006, Plaintiff was found not guilty of the substance abuse charge. (Dkt. #1, Exhibit 16). Plaintiff was also found not guilty of the bribery charge the same day. (Dkt. #1, Exhibit 17).

On May 18, 2006, corrections officer Bose - on orders from Defendant Merlau - seized all of Plaintiff's cardiac medications. (¶ 42). Plaintiff's medications were subsequently returned to him on an unknown date. *Id.*

As a result of these events, Plaintiff has asserted four claims that Defendants improperly retaliated against him in violation of his First Amendment rights. Plaintiff asserts that Defendants Merlau and Parker, in retaliation for being sued by Plaintiff in the action described above, ordered the April 25, 2006 searches of his cell with the intent of depriving him of potentially life-saving medication. Plaintiff asserts that Defendant Parker further retaliated against him by (1) attempting to order physician's assistant Ouellette to discontinue Plaintiff's cardiac medication, and then (2) reassigning Plaintiff to be treated by Dr. Gelabert, against whom Plaintiff is presently pursuing legal action for an alleged violation of his Eighth Amendment rights. Plaintiff asserts that after informing Defendant Blackmer that he would file a grievance and a lawsuit against him, Defendant Blackmer retaliated against him by charging him with two false major misconduct violations. Finally, Plaintiff asserts that Defendant Merlau retaliated against him by directing prison officials to wrongfully seize his cardiac medications on May 18, 2006. Defendants now move for summary judgment as to these claims. As discussed below, the Court concludes that genuine factual disputes exist which preclude the granting of summary judgment as to any of Plaintiff's retaliation claims.

A.     Standing

Defendants first assert that Plaintiff lacks standing to bring the aforementioned retaliation claims. Specifically, Defendants claim that because Plaintiff "has not alleged nor brought forward concrete and particularized evidence of any injury in fact" he "fails to establish standing."

The threshold requirement that a plaintiff must satisfy before bringing suit in federal court is standing, both constitutional and prudential. The Constitution requires that a plaintiff demonstrate that he has (1) suffered an injury, (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) which is likely to be redressed by the requested relief. *See Prime Media, Inc. v. City of Brentwood*, 474 F.3d 332, 337 (6th Cir. 2007). In addition to satisfying these constitutionally mandated requirements, a plaintiff must also satisfy the prudential (i.e., judicially created) standing requirements. The prudential standing doctrines preclude the assertion of "generalized grievances" or, generally speaking, the rights of third parties. Furthermore, the plaintiff's allegations must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.*

Defendants do not assert that Plaintiff's allegations run afoul of the prudentially-based limitations on standing. Rather, Defendants assert only that Plaintiff has failed to allege that he suffered an injury sufficient to confer standing. In support of their argument Defendants rely on the Sixth Circuit's decision in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). A careful reading of this decision, however, reveals Defendants' argument to be without merit.

As the court recognized, in the context of a retaliation claim the plaintiff's injury is the "adverse consequences" inflicted as a result of engaging in constitutionally protected conduct. *Id.* at 394. So long as such adverse consequences are "distinct and palpable" rather than "abstract, conjectural, or hypothetical" the plaintiff satisfies the injury-in-fact requirement. *Id.* In his pleadings, Plaintiff asserts

that Defendants deprived him of potentially life-saving medication and subjected him to false major misconduct charges in retaliation for engaging in constitutionally protected conduct. It is utterly unreasonable to assert that such alleged injuries are not "distinct and palpable." Defendants' characterization of Plaintiff's alleged injuries as de minimis is somewhat disturbing. The Court concludes, therefore, that Plaintiff has standing to pursue the retaliation claims identified above.

B.   Summary Judgment Standard

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive

determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

      C.      Plaintiff's Retaliation Claim against Defendant Blackmer

Plaintiff asserts that after informing Defendant Blackmer that he would file a grievance and a lawsuit against him, Defendant Blackmer retaliated against him by charging him with two false major misconduct violations.

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) he suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

      1.      Protected Conduct

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Id.* at 391 (citations omitted). This protection also guarantees to inmates the right to file non-frivolous

grievances. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct); *Violett v. Reynolds*, 2003 WL 22097827 at *2 (6th Cir., Sep. 5, 2003) (same).

As noted previously, Plaintiff claims that Defendant Blackmer falsely charged him with two major misconduct violations in retaliation for Plaintiff informing him that he would file a grievance against him as well as initiate legal action against him. The grievance which Plaintiff subsequently submitted against Defendant Blackmer was not frivolous. Plaintiff's subsequent legal claims against Defendant Blackmer are likewise not frivolous.

While Plaintiff's grievance and lawsuit were not initiated until after the allegedly retaliatory conduct, the Court nonetheless concludes that Plaintiff was engaged in protected conduct. In the context of a retaliation claim, the Court fails to discern a relevant distinction between the actual filing of a grievance or lawsuit and statements expressing a desire to seek redress for wrongs committed by prison officials, as such all serve to notify the official that the inmate feels he has been wronged in some way by the official's alleged misconduct. *See Hightower v. Vose*, 1996 WL 516123 at *1-2 (1st Cir., Sept. 12, 1996) (indicating that expressions of intent to file a grievance constitutes protected conduct); *Figueroa v. Regan*, 2003 WL 1751612 at *4 (E.D. Pa., April 3, 2003) (same). Accordingly, the Court concludes that Plaintiff was engaged in protected conduct.

2. Adverse Action Which Would Deter a Person of Ordinary Firmness

As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated,

"while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*

It is well settled that charging a prisoner with a major misconduct violation can constitute an adverse action sufficient to deter a person of "ordinary firmness" from continuing to engage in protected conduct. *See King v. Zamiara*, 150 Fed. Appx. 485, 493-94 (6th Cir., Oct. 7, 2005) ("[c]harging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges"); *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004) (the mere threat of disciplinary sanctions is "sufficiently adverse action to support a claim of retaliation"); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (a "reasonable jury could conclude that being subjected to the risk of [disciplinary sanctions]. . .would deter a person of ordinary firmness from continuing to engage in that [protected] conduct"). Accordingly, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

3.  Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue, and as has been recognized, while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As the Sixth Circuit has stated, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating

factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399; *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if Defendant demonstrates that he "would have taken the same action in the absence of the protected activity," he is entitled to summary judgment. *Thaddeus-X*, 175 F.3d at 399. A review of the major misconduct charges presently at issue reveals that there exist genuine issues of material fact precluding the granting of summary judgment.

Defendant Blackmer charged Plaintiff with two major misconduct violations - bribery and substance abuse. Plaintiff was found not guilty of bribery on the ground that it was an inappropriate charge. There also exists evidence that Plaintiff's protected conduct was the "motivating factor" behind Defendant Blackmer's decision to charge Plaintiff with bribery, as Defendant Blackmer based his charge of bribery on Plaintiff's statements that he intended to file a grievance and lawsuit against him.

Plaintiff was found not guilty of the substance abuse charge because an investigation revealed that Plaintiff had been properly prescribed the medication during a hospital visit more than two months before. Significantly, as noted above, the investigation into this particular charge revealed that health services had been aware for more than two months that Plaintiff had been prescribed this medication. This evidence certainly suggests that had Defendant Blackmer bothered to contact health services regarding the matter he would have been informed that Plaintiff's possession of the nitroglycerin pills was appropriate. It does not seem unreasonable to expect prison officials to undertake such minimal investigatory actions before charging a prisoner with such a serious misconduct violation. Defendant Blackmer's failure to so act could cause a reasonable juror to conclude that Plaintiff's

protected conduct was a "motivating factor" behind Defendant Blackmer's decision to falsely charge Plaintiff with substance abuse.

Accordingly, the Court recommends that Defendant Blackmer's motion for summary judgment be denied.

D.      Plaintiff's Retaliation Claims against Defendant Parker

Plaintiff asserts that Defendant Parker ordered the April 25, 2006 search of his cell with the intent of depriving him of potentially life-saving medication. Plaintiff also claims that Defendant Parker attempted to order physician's assistant Ouellette to discontinue Plaintiff's cardiac medication and, moreover, when this proved unsuccessful simply reassigned Plaintiff to be treated by Dr. Gelabert, who Plaintiff has charged (in the other action identified above) with violating his Eighth Amendment rights. Plaintiff asserts that Defendant Parker undertook these actions in retaliation for being sued by Plaintiff in the action described above.

1.      April 25, 2006 Search of Plaintiff's Cell

Plaintiff asserts that Defendant Parker ordered the search of his cell as retaliation for pursuing legal action against her. The still pending Eighth Amendment claims which Plaintiff has asserted against Defendant Parker are not frivolous and, therefore, constitute protected conduct.

With respect to the second element of the analysis, Plaintiff asserts that Defendant Parker ordered the search of his cell in an attempt to deprive him of potentially life saving medication. Such allegations are hardly inconsequential. Thus, the Court concludes that resolution of this particular element presents factual disputes which cannot be resolved on a motion for summary judgment.

As for whether Plaintiff's legal action against Defendant Parker was a "motivating factor" behind Defendant Parker's decision to order the search of Plaintiff's cell, the Court finds that there exists sufficient evidence to preclude summary judgment. Defendant Parker does not dispute that she ordered the April 25, 2006 search of Plaintiff's cell. Rather Defendant Parker asserts that she ordered the search of Plaintiff's cell because "there was no valid order for nitroglycerin tablets and Mr. Copenhaver had requested additional nitroglycerin." (Dkt. #30, Parker Affidavit). However, Defendant Parker does not indicate what steps - if any - she undertook to determine whether Plaintiff had been properly prescribed nitroglycerin tablets. Again, it does not seem unreasonable to expect prison officials to undertake minimal investigatory actions prior to depriving a prisoner of potentially life-saving medication. If Defendant Parker failed to act reasonably in this respect, a reasonable juror could certainly conclude that Plaintiff's protected conduct was a "motivating factor" behind Defendant Parker's alleged actions.

Moreover, as noted above an investigation into the charge that Plaintiff lacked proper authority to possess the nitroglycerin tablets revealed that "health services has been aware since Feb. 21 that [Plaintiff] has had this nitro in his possession, and has not once told him he cannot have it." (Dkt. #55). Thus, there exist legitimate factual questions regarding Defendant Parker's actions and motivations which preclude summary judgment.

2.      Medication and Treatment Claim

Plaintiff asserts that Defendant Parker, as retaliation for having been sued by Plaintiff, attempted to order physician's assistant Ouellette to discontinue Plaintiff's cardiac medication. Plaintiff further asserts that when this proved unsuccessful, Defendant Parker directed that he be treated by Dr. Gelabert, who Plaintiff has charged with violating his Eighth Amendment rights. As noted above,

Plaintiff's Eighth Amendment claims against Defendant Parker are not frivolous and, therefore, constitute protected conduct under the First Amendment.

Defendant Parker's alleged conduct is certainly not inconsequential. A reasonable person could certainly conclude that attempting to deprive an inmate of potentially life-saving medication or directing that he receive treatment from a doctor whom the inmate is suing for violation of his Eighth Amendment rights is sufficient to deter a person of reasonable firmness. Accordingly, the Court finds that resolution of this particular element presents factual disputes which cannot be resolved on a motion for summary judgment.

With respect to the final element of the analysis, Defendant Parker asserts that Plaintiff's allegations "are false." (Dkt. #30, Parker Affidavit). Defendant Parker asserts that she did not order physician's assistant Ouellette to discontinue Plaintiff's medication. While Defendant Parker could have perhaps supported this assertion with an affidavit executed by physician's assistant Ouellette (or some other evidence), she opted instead to rely on her unsubstantiated assertion.

Defendant Parker further asserts that "ordering medications is not within the scope of a Registered Nursing license." Again, Defendant Parker has not supported this assertion with any evidence. The Court further notes that Michigan Department of Corrections Policy certainly appears to contemplate that a registered nurse may, in limited circumstances, prescribe medications. *See* Michigan Department of Corrections Policy Directive 03.04.100C, Pharmacy Services and Medication Management. This observation appears to be consistent with Michigan law. *See* Michigan Nurses Association, Nurse Practitioner Frequently Asked Questions, available at http://www.minurses.org/apn/apn-npfaq.shtml#prescriptiveauthority (last visited on March 27, 2007) (noting that in certain circumstances a physician may delegate the authority to prescribe medications to

"a registered professional nurse"); 1979-1980 Mich. Op. Atty. Gen. 553, 1979-1980 OAG No. 5630, 1980 WL 113998 (Mich. A.G.) (recognizing that under Michigan law, a physician may in limited circumstances "delegate the prescribing of a drug to a licensed professional nurse").

In sum, Plaintiff has asserted facts supporting the conclusion that Defendant Parker's actions were motivated by his protected conduct. In response, Defendant Parker has submitted only the unsubstantiated assertion that Plaintiff's allegations "are false." Such hardly merits the granting of summary judgment. Accordingly, the Court recommends that Defendant Parker's motion for summary judgment be denied.

E.   Plaintiff's Retaliation Claims against Defendant Marlau

Plaintiff asserts that on April 25, 2006, Defendant Merlau ordered a search of his cell with the intent of depriving him of potentially life-saving medication. Plaintiff also claims that on May 18, 2006, Defendant Merlau wrongfully ordered prison officials to seize his cardiac medications. Plaintiff asserts that Defendant Merlau undertook these actions in retaliation for being sued by Plaintiff in the action described above.

1.   April 25, 2006 Search of Plaintiff's Cell

Plaintiff asserts that Defendant Merlau ordered the search of his cell as retaliation for pursuing legal action against her. The still pending Eighth Amendment claims which Plaintiff has asserted against Defendant Merlau are not frivolous and, therefore, constitute protected conduct under the First Amendment.

With respect to the second element of the analysis, Plaintiff asserts that Defendant Merlau ordered the search of his cell in an attempt to deprive him of potentially life saving medication. Such allegations are not inconsequential. Thus, the Court concludes that resolution of this particular element presents factual disputes which cannot be resolved in the context of a motion for summary judgment.

Defendant Merlau does not deny that she ordered the April 25, 2006 search of Plaintiff's cell. Defendant Merlau instead asserts that Plaintiff's "clinical file did not indicate a valid order for nitroglycerin" thus suggesting that such was the motivation for her actions. (Dkt #30, Merlau Affidavit). However, Defendant Merlau does not indicate what steps - if any - she undertook to determine whether Plaintiff had been properly prescribed nitroglycerin tablets. As noted previously, it does not seem unreasonable to expect prison officials to undertake minimal investigatory actions prior to depriving a prisoner of potentially life-saving medication. If Defendant Merlau failed to act reasonably in this respect, a reasonable juror could certainly conclude that Plaintiff's protected conduct was a "motivating factor" behind Defendant Merlau's alleged actions.

Moreover, as previously noted, an investigation into the charge that Plaintiff improperly possessed the nitroglycerin tablets revealed that "health services has been aware since Feb. 21 that [Plaintiff] has had this nitro in his possession, and has not once told him he cannot have it." (Dkt. #55). The Court concludes, therefore, that there exist legitimate factual questions regarding Defendant Merlau's actions and motivations which preclude summary judgment.

        2.       May 18, 2006 Seizure of Plaintiff's Medication

Plaintiff asserts that Defendant Merlau further retaliated against him by directing prison officials to wrongfully seize his cardiac medication on May 18, 2006. As previously noted, Plaintiff's claims against Defendant Merlau are not frivolous, thus the first element of the analysis is satisfied.

With respect to whether Defendant Merlau's alleged actions are sufficient to deter a person of ordinary firmness from engaging in protected conduct, the Court finds that there exist unresolved issues of material fact. Defendant Merlau asserts that the May 18, 2006 seizure of Plaintiff's medication was only temporary and that Plaintiff's medications were returned to him the following day. Plaintiff acknowledges that his medications were returned to him, but does not identify the date on which this occurred. The Contraband Removal Form which Plaintiff included with his complaint *suggests* (but does not definitely establish) that Plaintiff's medications were returned to him on May 19, 2006. (Dkt. #1, Exhibit 21). Even if this is accurate, however, the fact remains that Plaintiff was deprived of potentially life-saving medication for at least one day. Such action is certainly not inconsequential and in the Court's estimation, a reasonable juror could conclude that such action could deter a person of ordinary firmness from engaging in protected conduct.

With respect to whether Defendant Merlau's alleged actions were motivated by Plaintiff's conduct, the evidence thus far submitted precludes the granting of summary judgment. Defendant Merlau does not deny ordering the seizure of Plaintiff's medication on May 18, 2006, but instead asserts that she does not recall doing so. (Dkt. #30, Merlau Affidavit). She further asserts, however, that seizing a prisoner's medication "has been done in the past in order to perform a proper review of the medicines that are in possession of a patient." *Id.*

While the Court understands that prison officials must ensure that prisoners do not possess medication without a proper prescription, Defendant Merlau offers neither evidence nor explanation as to why it was necessary to seize - for at least one day - Plaintiff's cardiac medication in order to determine that Plaintiff had been properly prescribed such. Plaintiff asserts that his medication was seized and placed into "storage," an assertion consistent with the fact that Plaintiff's medications were seized as contraband. (Dkt. #1, Exhibit 21). Moreover, seizing medication as "contraband" appears to be in conflict with the suggestion by Defendant Merlau that Plaintiff's medication was seized for the benign purpose of determining whether he possessed a proper prescription for such. Plaintiff also disputes Defendant Merlau's assertion that his medication was returned following the completion of a routine prescription assessment. According to Plaintiff, his medications were returned only after "intervention" by "facility administrators." Accordingly, the Court recommends that Defendant Merlau's motion for summary judgment be denied.

## CONCLUSION

As articulated herein, the undersigned recommends that <u>Defendants Parker's and Merlau's Motion for Summary Judgment</u>, (dkt. #29), be **denied**; <u>Defendant Blackmer's Motion for Summary Judgment</u>, (dkt. #37), be **denied**; <u>Plaintiff's Motion for Declaratory Judgment</u>, (dkt. #44), be **denied**; and <u>Defendants' Motion to Strike Plaintiff's Affidavit</u>, (dkt. #57), be **granted in part and denied in part**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                      Respectfully submitted,

Date:  August 6, 2007                              /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge